## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KENNETH YEARGIN, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-CV-638-SAJ |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying disability insurance benefits under Title II of the Social Security Act. Plaintiff asserts that (1) the finding that his impairments do not equal a Listing is not supported by substantial evidence; (2) the ALJ failed to properly consider the treating physician's opinion; (3) the ALJ failed to properly consider Plaintiff's credibility; (4) the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence; and (5) the finding that there are a significant number of jobs which Plaintiff can perform is not supported by substantial evidence. For the reasons set forth below, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this opinion.

### 1. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, Kenneth Yeargin, was born on March 24, 1948, and was 53 years old on the date last insured, December 31, 2001. [R. 154, 176]. He previously filed an application for a period of disability and disability insurance benefits on October 12, 1999, alleging

---

[1] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

disability as of May 24, 1997.  That previous application was denied by an ALJ on July 10, 2001.   [R. 19].   Therefore, the relevant period in this case is July 11, 2001 through December 31, 2001.

Plaintiff has a high school education and attended college for two years. [R. 196]. He previously worked as a crane operator.  [R. 191].  Plaintiff alleges that he became disabled beginning on May 24, 1997, due to arthritis in his hands, back, hips, knees, and ankles, tremors, and depression.  [R. 162, 208, 229, 569].  He also alleges he has sleep apnea and rotator cuff disease. [R. 162].  In November 2001, Plaintiff was  diagnosed with rheumatoid arthritis in his hands, wrists, right elbow, ankles and feet, which caused his joints to swell and occasionally limited his range of motion. [R. 450-453].  Plaintiff alleges his arthritis makes it difficult for him to sit, stand or walk for prolonged periods.  [R. 190, 210].  He takes medication for his arthritis, but reports no side effects from it.  [R. 195].

In February 1999. Plaintiff was diagnosed with progressive tremors in his right hand and arm, which affect his ability to type and write, and have been noted to worsen with activity.  [R. 275, 285, 312 575, 577].  Although he takes medication for the tremors, he reported that it does not help.  [R. 317].

Plaintiff filed a second application for a period of disability and disability insurance benefits on December 6, 2001.  [R. 154].  The Commissioner initially denied his application on April 17, 2002,  and on reconsideration, denied it again on June 5, 2002.  [R. 92, 98]. Plaintiff then filed a Request for Hearing Before an ALJ on July 12, 2002. [R. 90].  ALJ Stanley Schwartz held a hearing on July 17, 2003.  [*See* R. 593-654].  On October 29, 2003, ALJ Schwartz concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time through the date of his decision.  [R. 41].  Plaintiff

2

subsequently filed a Request for Review of Hearing Decision on November 13, 2003.  [R.

107].   The Appeals Council reviewed Plaintiff's request and remanded the case on

September 24, 2004.  [R. 117-119].  A second hearing was held in front of ALJ Richard A.

Say on January 6, 2006.  [*See* R. 563-591].   On March 31, 2006, ALJ Say concluded that

Plaintiff had not been under a disability, as defined by the Social Security Act, at any time

through December 31, 2001, the date last insured.  [R. 25].  Plaintiff then filed a Request

for Review of Hearing Decision on April 5, 2006.  [R. 12].  The Appeals Council denied his

request on October 2, 2006, making it the final decision of the Commissioner.  [R. 6].

Plaintiff now seeks judicial review of the Commissioner's decision.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social

security claims.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Disability under the Social Security

Act is defined as the

> inability to engage in any substantial gainful activity by reason
> of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work in the
> national economy. . . .

42 U.S.C. § 423(d)(2)(A).[2]

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972).  Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1521, 416.972.  If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*.  *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational.  *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[3] as to any fact, if supported by substantial evidence, shall be conclusive, . . ."  42 U.S.C. §  405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion.

Two), disability benefits are denied.  At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled.  If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work.  A claimant is not disabled if the claimant can perform his past work.  If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy.  If a claimant has the RFC to perform an alternate work activity, disability benefits are denied.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

[3] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L No. 103-296. For the purposes of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner".

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards.  *Glass*, 43 F.3d at 1395.

### 3. ADMINISTRATIVE LAW JUDGE'S DECISION

In his decision, the ALJ determined that, through the date last insured, (1) Plaintiff met the insured status requirements of the Social Security Act on December 31, 2001; (2) Plaintiff had not engaged in substantial gainful activity at any time relevant to the ALJ's decision; (3) Plaintiff had rheumatoid arthritis, obesity, degenerative disc disease, right hand tremor, and sleep apnea, all of which were considered severe impairments; (4) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (5) Plaintiff had the residual functional capacity to lift 10 pounds frequently or 20 pounds occasionally, grasp, feel, or finger no more than occasionally, and would need a sit/stand option; (6) Plaintiff was unable to perform his past relevant work; (7) Plaintiff was born on March 21, 1948 and was defined as a younger individual age 45-49; (8) Plaintiff has at least a high school education and is able to communicate in English; (9) transferability of job skills is not material to the determination of disability due to Plaintiff's age; and (10) considering Plaintiff's age, education, work experience, and residual functional capacity, there were

5

jobs in the national economy that Plaintiff could have performed.  [R. 22-24].  Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Social Security Act, at any time through December 31, 2001, the date last insured.  [R. 25].

## 4. REVIEW

### A. Discussion of Plaintiff's Impairments and the Listings

Plaintiff initially contends that the ALJ erred at Step Three of the five step sequential evaluation process when the ALJ concluded that Plaintiff's impairments did not meet or medically equal a Listing.  Specifically, Plaintiff contends that the ALJ erred when he failed to find that Plaintiff's tremors met or medically equaled Listing 11.06, which pertains to Parkinson's disease.

At Step Three, a claimant's impairment is compared to the Listings found at 20 C.F.R. Pt. 404, Subpt. P, App.1.  If the impairment meets the criteria for or is medically equivalent to an impairment in the Listings, the claimant is presumed to be disabled.  A plaintiff has the burden of proving that a Listing has been equaled or met.  *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  However, the ALJ is "required to discuss the evidence and explain why he found that [the claimant] was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

In his decision, the ALJ found that, through the date last insured, Plaintiff's rheumatoid arthritis, obesity, degenerative disc disease, right hand tremor, and sleep apnea were all considered severe impairments.  [R. 22].  He then went on to conclude that "[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part

6

404, Subpart P, Appendix 1." *Id.*  Plaintiff does not allege that his rheumatoid arthritis, obesity, degenerative disc disease, or sleep apnea meet or medically equal a Listing. However, he does allege that his arm and leg tremors medically equal Listing 11.06 and faults the ALJ for not reaching that conclusion.

In this case, for Plaintiff to be found presumptively disabled at this step of the five step sequential evaluation process, he would have to show that his tremors meet or medically equal Listing 11.06.  The regulations provide the following requirements to establish that a claimant's tremors meet or medically equal a Listing:

> *Parkinsonian syndrome* with the following signs: Significant rigidity, brady kinesia, or tremor in two extremities, which, singly or in combination, result in sustained disturbance of gross and dexterous movements, or gait and station.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.06.   In August 2001, one of Plaintiff's doctors noted that he experienced tremors in his hands and legs.  [R. 273]. Additionally, Plaintiff was prescribed Primidone and Mysoline, medications used for treating tremors.  [R. 219, 277].

The Commissioner contends that Plaintiff has failed to meet his burden to establish that he experiences tremors in two extremities, and therefore does not meet or medically equal the requirements of Listing 11.06.  He further argues that Plaintiff has pointed to no evidence in the record to support his allegations, but only has made general claims regarding his condition. [Resp. Br. Dkt. #24 at 4]. However, under the Social Security Act, any decision

> which involves a determination of disability and which is in whole or in part unfavorable . . . shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the

Commissioner's determination and the reason or reasons upon which it is based. 42 U.S.C. § 405(b)(1).

Whether or not Plaintiff met his burden at Step Three, the ALJ erred when he merely stated a summary conclusion that Plaintiff's impairments did not meet or medically equal a listed impairment.  [R. 22].  The ALJ erred when he failed to identify the relevant Listing or Listings he considered and when he failed to discuss the evidence and his reasons for determining that Plaintiff was not disabled at this step.  "In the absence of ALJ findings supported by specific weighing of the evidence, [the Court] cannot assess whether relevant evidence adequately supports the ALJ's conclusion that [Plaintiff's] impairments did not meet or equal any [l]isted [i]mpairment, and whether he applied the correct legal standards to arrive at that conclusion." *Clifton*, 79 F.3d at 1009.  Thus, the ALJ's conclusion at this step in the sequential evaluation process as to whether Plaintiff's impairments meet or medically equal a Listing is nothing more than "a bare conclusion . . . beyond any meaningful judicial review."  *Id.*  In finding the ALJ's Step Three analysis insufficient, however, the Court expresses no opinion on the merits of Plaintiff's arguments that his tremors equaled the requirements of Listing 11.06.  The ALJ should address those arguments on remand, with the appropriate consideration of the evidence and discussion of his reasoning at Step Three.

**B. Treating Physician's Opinion**

In his second assignment of error, Plaintiff alleges that the ALJ improperly rejected the opinion of Dr. Michael Joseph, who began treating Plaintiff's rheumatoid arthritis on

8

November 30, 2001.  On February 28, 2003, Dr. Joseph summarized Plaintiff's condition and identified limitations in functioning, finding that Plaintiff could not lift any amount on even an occasional basis, and could stand for less than one hour in an eight-hour work day. [R. 442-44].  Dr. Joseph indicated that Plaintiff experienced fatigue and disturbances in concentration, and would need to lie down during the work day. Dr. Joseph estimated Plaintiff would miss three days of work per month because of his impairments.  [R. 444].

The ALJ noted that there was a mark on the physical assessment, but that the mark "clearly does not match" Dr. Joseph's signature on treatment notes included in the record. [R. 23]. Plaintiff argues the ALJ erred in assigning less weight to Dr. Joseph's opinion based on the ALJ's perception that the signature on the physical assessment was not Dr. Joseph's.  Plaintiff contends that, as part of the ALJ's duty to develop the record, the ALJ should have contacted Dr. Joseph to confirm whether or not his signature was on the physical assessment.

The Tenth Circuit has addressed Plaintiff's contention in a similar context, criticizing another ALJ's questioning the validity of a treating physician's signature as reason to discredit the physician's assessment of limitations.  In *McGoffin v. Barnhart*, 288 F.3d 1248 (10th Cir. 2002), the Tenth Circuit stated that the ALJ's reliance on his own "unfounded doubt that [the treating physician] agreed with the assessment he signed" was error.  *Id.* at 1252. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*" *Id.* (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)(emphasis in *McGoffin*).  The Tenth Circuit further noted that, "[a]t

9

the least, if the ALJ believed that the matter was open to question, he had an obligation under the applicable regulations to obtain addition information" from the treating physician "before rejecting the report outright."[4]  *Id.*  Thus, when the ALJ concluded that there was an uncertainty as to whether the signature contained in that report was actually Dr. Joseph's, he had a duty to contact Dr. Joseph to verify the authenticity of the signature, before he discounted that assessment.  The ALJ's failure to fulfill that duty was error, similar to that the Tenth Circuit recognized in *McGoffin*.

"The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004);  *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).  As evidence purportedly inconsistent with Dr. Joseph's assessment, the ALJ cited three treatment notes from Family Care Specialists, Inc., dated July 5, 2001,  and October 8, 2001, which showed that Plaintiff had mild edema and tenderness in his right wrist, but no "hot joints,"  and a treatment note dated February 14, 2002, which indicated Plaintiff had no "hot joints."  [R. 393, 396, 401].

Plaintiff argues that  the three treatment records that reported "no hot joints" are not inconsistent with, and do not refute, Dr. Joseph's assessment.  The Commissioner does

---

[4] 20 C.F.R. §404.1512(e)(1) states:
We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

not directly answer this argument.[5]   In his decision, the ALJ failed to explain why, or how, he determined that the lack of "hot joints" was significant, as well as  inconsistent with Dr. Joseph's assessment.   When the ALJ fails "to explain or identify what the claimed inconsistencies were between [the treating physician's] opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."  *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).

The ALJ further failed to recognize that, even if the case record contained substantial evidence inconsistent with Dr. Joseph's assessment to make the assessment not entitled to controlling weight, the assessment was "still entitled to deference and must be weighed using all of the [relevant] factors." *Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions,* SSR 96-2p, 1996 WL 374188 at *4 (*S.S.A. July 2, 1996).[6]   The ALJ failed to explain how he weighed Dr. Joseph's assessment against Nurse Practitioner Schnell's three examination reports that found no "hot joints."  "When a treating physician's opinion is inconsistent with other

_____

[5]The Commissioner raises several arguments to support his contention that the ALJ correctly assigned less weight to Dr. Joseph's physical assessment.  The Commissioner argues that Dr. Joseph's assessment was not supported by clinical or laboratory diagnostic techniques, that  the minimal findings made by Dr. Joseph do not substantiate the assessed restrictions, that Plaintiff's statements contradict the limitations set forth in the assessment, that Dr. Joseph failed to indicate that his assessment was the product of a physical examination, and that the assessment was brief and conclusory. [Resp. Br. Dkt. #24 at 5-6].  However, these arguments are simply the Commissioner's post hoc justifications for assigning less weight to Dr. Joseph's assessment, as the ALJ did not provide such rationale in his decision.  *See Robinson*, 366 F.3d at 1084 (the ALJ's decision should be evaluated solely on the reasons stated in the decision).

[6]Although Social Security rulings do not carry the force of law, they are generally entitled to deference because "they constitute the Social Security Administration's interpretations of its own regulations and the statute which it administers."  *Walker v. Sec'y of Health & Human Servs.*, 943 F.2d 1257, 1259-60 (10th Cir. 1991).

medical evidence, the ALJ's task is to examine the other physician's reports to see if they outweigh the treating physician's report, not the other way around." *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).  The ALJ's decision gives no indication that he performed that necessary weighing[7] before giving Dr. Joseph's assessment lesser weight.

The ALJ failed to follow the correct legal standards in evaluating Dr. Joseph's assessment, and his determination to give that assessment lesser weight was not based on substantial evidence.  On remand, the ALJ shall re-evaluate, and then explain, the weight he gives that assessment, and the evidence and reasons on which he relies for that weight.

### C. RFC Assessment and ALJ's Hypothetical

Plaintiff next alleges that the ALJ's assessment of his RFC is not supported by substantial evidence.  Plaintiff argues that the ALJ erred when he failed to specify how frequently Plaintiff needed to alternate his sitting and standing.

The Commissioner recognizes that in some cases, "the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing," making that person "not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work." *Program Policy Statement Titles II and XVI: Capability to Do Other Work - The*

---

[7] 20 C.F.R. §404.1527(d) states that "we consider all of the following factors in deciding the weight we give" to any medical opinion: (1) examining relationship; (2) treatment relationship, including the length, nature and extent of relationship; (3) supportability of the opinion; (4) consistency of the opinion with the other record as a whole; (5) specialization of the medical source rendering the opinion; and (6) other factors.

*Medical-Vocational Rules as a Framework for Evaluating Exertional Limitations Within a Range of Work or Between Ranges of Work*, SSR 83-12, 1983 WL 31253  at *4 (S.S.A. 1983).   Ruling 83-12 also notes that "most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task," and that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will;" the Ruling recommends that a vocational source be consulted to clarify the impact of the need to alternate sitting and standing.  *Id.*  The Commissioner further recognizes that the "RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing" in assessing the erosion of the sedentary occupational base. *Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work - Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work,* SSR 96-9p, 1996 WL 37185 at *7 (*S*.S.A. July 2, 1996).  However, the same requirement for specificity as to the frequency of the individual's need to alternate sitting and standing makes it also necessary to assess whether a claimant can perform the prolonged standing or walking characteristic of light work.

The Dictionary of Occupational Titles ("DOT") indicates that the duties of the two light, unskilled jobs of an usher and retail attendant primarily involve assisting and directing patrons and customers. Thus, the requirement to stand and walk is dependent on meeting the patron's or customer's needs, rather than on the employee's desire to change his position from sitting to standing and/or walking, and then back to sitting for relief of his

symptoms.[8]  The DOT suggests that an individual working as an usher or retail attendant can not change his position at will while performing the described duties.  While the ALJ did not specify in his RFC that Plaintiff would need to alternate positions at will, he failed to assess how frequently Plaintiff's pain would require relief in the form of changing his position.  Plaintiff testified that, in December 2001, he could sit for fifteen to thirty minutes, depending on the type of chair. He stated that he could not stand for more than fifteen minutes at a time because his left knee was bothering him in December 2001. [R. 577]. Plaintiff testified that, in December 2001, walking was painful for him, and he "probably couldn't walk a block." [R. 577-78].  Plaintiff's testimony that he needed to change positions in fifteen-minute intervals throughout the work day suggests that frequency would be not much different than the ability to change positions at will, raising the question of whether Plaintiff could perform those two light, unskilled jobs.

In failing to specify the amount of time and frequency with which Plaintiff needed to alternate sitting, standing and walking, the ALJ also failed to comply with SSR 96-8p's requirement that he consider Plaintiff's RFC on a "function-by-function" basis, and that he consider each exertional function (such as sitting, standing and walking) separately.  *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims,* SSR 96-8p ,1996 WL 374184 at *3, 5 *(S*.S.A. July 2, 1996).  Ruling 96-8p cautions that "it is not invariably the case that treating  the activities [functions] together will result

_____

[8]*See* U.S. Dept. of Labor, Employment and Training Administration, *Dictionary of Occupational Titles*, 299.677-014 (retail attendant) and 344.677-014 (usher). The DOT describes the retail attendant job duties as "helps customers in locating merchandise . . . obtains merchandise from stockroom . . . arranges stock on shelves or racks in sales area . . . directs or escorts customer to fitting or dressing room or to cashier . . . keeps merchandise in order . . . [and] inventories stock."  Duties of an usher include "assisting patrons . . . to find seats, search for lost articles and locate facilities . . . distributes programs to patrons [and] assists other workers to change advertising display."

14

in the same decisional outcome as treating them separately," and "it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate."  *Id.* at *5.  In finding only that Plaintiff would "need a sit/stand option," the ALJ erred in failing to consider whether separately assessing Plaintiff's exertional abilities to sit, stand and walk would yield a different RFC result.

As a result of the ALJ's failure to specify the amount of time in which Plaintiff could sit or stand in formulating his RFC,  Plaintiff argues the hypothetical the ALJ posed to the vocational expert ("VE") was inadequate, because it did not specify the limitations on the frequency of Plaintiff's need to alternate sitting, standing, or walking.  Plaintiff contends the ALJ's hypothetical question did not reflect all Plaintiff's limitations with precision.[9]  An ALJ's hypothetical questions "must include all (and only) those impairments borne out by the evidentiary record."  *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (footnote omitted).  Furthermore, testimony "'elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'"  *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)(quoting *Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990)).  The  VE's testimony of the two light, unskilled jobs at Step Five is not substantial evidence to support the ALJ's denial of benefits, because of the ALJ's error in failing to inform the VE of the time amount and frequency with which the hypothetical claimant needed to alternate standing and walking with sitting.

### D. ALJ's Step Five Determination

---

[9]In his hypothetical question to the VE, the ALJ only stated that the individual "would find it necessary to change position from time to time to relieve his symptoms." [R. 586-87].

In his decision, the ALJ limited Plaintiff to only occasionally grasping, feeling, or fingering.  [R. 24].  At the hearing, the vocational expert ("VE") testified that a hypothetical person with those limitations would be able to do light, unskilled jobs as an usher and retail attendant.[10]   [R. 587-589].

Plaintiff argues that a conflict exists between the VE's testimony and the DOT's description of the retail attendant job as requiring frequent handling. *See Dictionary of Occupational Titles*, 299.677-014.  Handling is defined as "[s]eizing, holding, grasping, turning, or otherwise working with hand or hands."  U.S. Dept. of Labor, Employment and Training Division, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, Appendix C, C-3 (1993).  Plaintiff contends the VE's testimony that Plaintiff could perform this job with the ALJ's limitation to only occasional grasping conflicts with the DOT's requirement for frequent handling.  Although the ALJ stated in his decision that, "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in" the DOT [R. 25], the ALJ did not ask the VE whether her testimony was consistent with the DOT, and the ALJ neither identified this apparent conflict, nor sought explanation for it at the hearing from the VE.  An ALJ is required to  "investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as

---

[10] *See* U.S. Dept. of Labor, Employment and Training Administration, *Dictionary of Occupational Titles*, 299.677-014 (retail attendant) and 344.677-014 (usher). The vocational expert also named two sedentary, unskilled jobs of information clerk and credit card interviewer in response to the ALJ's hypothetical question.  However, at step five, given Plaintiff's age, education, and lack of transferable skills, the Medical-Vocational Guidelines, Rule 201.14 would dictate a finding of "disabled" if Plaintiff were limited to sedentary unskilled jobs.

16

substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999).  The ALJ failed to comply with this requirement.

The Commissioner essentially concedes the ALJ's failure to comply with his duty under Ruling 00-4p for identifying and resolving the conflict as to the retail attendant job. However, the Commissioner asserts that the second light, unskilled job of an usher, which the VE named in response to the ALJ's hypothetical question, remains as substantial evidence of work in "significant numbers" to support the ALJ's determination of nondisability at step five. [Resp. Br. Dkt.#24 at 9-10].

The Commissioner made a similar argument to the Tenth Circuit in *Allen v. Barnhart*, 357 F.3d 1140 (10th Cir. 2004), contending that a single job constituted a "significant number" at step five to support the ALJ's nondisability determination there.  The Tenth Circuit disagreed, holding that the ALJ's recitation of "identified jobs in significant numbers" was based on the three jobs named by the VE, and not the single job remaining after the Court eliminated two of the three jobs as unresponsive to the ALJ's hypothetical question. The Tenth Circuit clarified that "the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and most importantly, that the evaluation 'should be ultimately left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" *Id.* at 1144.  The Court then reasoned that because the ALJ erroneously relied on the total numbers attributed to the three jobs the VE named, the ALJ never decided if the one remaining job in itself "constituted a significant number under the statute" and did not give "explicit consideration to the factors this court has recognized should guide the ALJ's commonsense judgment."

17

*Id.* That same rationale applies here, as the ALJ's decision based his finding of "other work that existed in significant numbers in the national economy" on the "testimony of the vocational expert" of all four named jobs. [R. 25]. The ALJ never addressed whether the single job of an usher existed in "significant numbers" in itself, under the factors the Tenth Circuit noted for a "commonsense judgment."[11] As in *Allen*, the ALJ's decision failed to make the "many fact-detailed considerations requiring individualized evaluation" so that his decision is similarly subject to remand. *Allen*, 357 F.3d at 1145-46.

### E. Credibility

Finally, Plaintiff argues that the ALJ made an improper determination of his credibility. Plaintiff alleges that the ALJ's findings that his reported activities were inconsistent with his complaints of pain, and consistent with the ability to perform light work, were not based on substantial evidence. In response, the Commissioner alleges that the ALJ's findings were supported by Plaintiff's "active" participation in driving and hooking up his recreational vehicle. [Resp. Br. Dkt. #24 at 8].

The evidence, however, does not support the Commissioner's allegation regarding Plaintiff's "active participation." When questioned by the ALJ at the hearing, Plaintiff testified that he and his wife lived in the recreational vehicle while it was parked in Grove, Oklahoma from March 2001 until April 2002, and they did not travel a lot, because he was "having

---

[11]In *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992), the Tenth Circuit discussed the factors which it indicated the ALJ should consider in determining whether work exists in significant factors, including "the level of claimant's disability, the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; [and] the types and availability of such work." *Id*. at 1330. In *Trimiar*, the Tenth Circuit found the ALJ weighed the relevant factors in reaching his conclusion of jobs that existed in significant numbers at step five. Here, the ALJ's decision does not indicate that he developed the record to be able to perform such weighing of the suggested factors as support for his finding of "significant numbers."

trouble with . . . arthritis." [R. 570, 572]. Plaintiff testified that, in December 2001, he slept three to four hours a day, watched television, or played games on his laptop computer. [R. 574-75]. Both Plaintiff and his wife testified that she performed the household chores and daily upkeep on the recreational vehicle. [R. 572, 583]. No evidence in the record suggests what amount of exertion is required to "hook up" the recreational vehicle. The ALJ did not question Plaintiff at the hearing regarding that exertional level, or how long and how often Plaintiff had perform that task to support the Commissioner's suggestion of Plaintiff's "active" participation as reducing his credibility.[12]

In a similar manner, the ALJ relied on a single treatment note from 2000 that characterized Plaintiff as driving his recreational vehicle through Texas. [R. 23]. However, the ALJ did not question Plaintiff about that note to determine how much driving Plaintiff performed prior to the relevant period, and when his wife began shouldering the driving responsibilities. The evidence from the relevant period indicates Plaintiff received medical and chiropractic treatment while living in Grove, Oklahoma during 2001, and does not support the ALJ's inference that Plaintiff continued to drive his recreational vehicle during 2001. [R. 234-57, 271, 384-99]. The ALJ failed to explain why he found that particular, single treatment note significant, and why a treatment note, from a period of time for which

---

[12]Where "activities were not conducted on a regular basis and did not involve prolonged physical activity," the Tenth Circuit has found that "such diversions [do not] establish, without more evidence, that a person is able to engage in 'substantial gainful activity.'" *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). "In order to engage in gainful activity, a person must be capable of performing on a reasonably regular basis" so that "[w]orking for an hour or so as a janitor in an intermittent fashion is not inconsistent with complaints of pain." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). No evidence is present in the record to be able to assess how regularly Plaintiff "hooked up" his recreational vehicle or how much prolonged physical activity that task involved.

19

Plaintiff has already been determined "not disabled," contradicted Plaintiff's and his wife's testimony that he did not drive the recreational vehicle during the relevant period.

An ALJ's credibility determination should be closely and affirmatively linked to substantial evidence rather than a conclusion in the guise of findings.  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ cited a single record from April 2001, in which Plaintiff identified himself as "retired." [R. 23]. However, the ALJ did not question Plaintiff at the hearing to learn why Plaintiff styled himself as "retired," and the ALJ failed to explain why Plaintiff's "retired" self-description made him less credible.  The Commissioner offers the explanation that referring to oneself as "retired" is inconsistent with allegations of disability. [Resp. Br. Dkt. # 24 at 8]. However, that explanation is a post-hoc justification for the ALJ's failure to specify why he found Plaintiff not fully credible based on that single record.[13]

## 5. CONCLUSION

Plaintiff asks that the Court remand his case for payment of benefits, contending that Dr. Joseph's assessment limiting Plaintiff to one hour of standing would reduce Plaintiff to performing only sedentary work, for which Plaintiff would be found disabled under the Medical-Vocational Guidelines, based on his age, education and lack of transferable skills.  While the ALJ failed to give "good reasons" in his decision  for rejecting Dr. Joseph's

---

[13] *See Robinson*, 366 F.3d at 1084 (the ALJ's decision should be evaluated solely on the reasons stated in the decision).

assessment,[14] it is the ALJ's responsibility, as the finder of fact, to weigh that treating physician's opinion under the correct legal standards.

The Commissioner's decision denying Plaintiff's application for Social Security benefits does not apply the proper legal standards and is not supported by substantial evidence.  Accordingly, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this opinion.

It is so ordered this 9th day of September, 2008.

Sam A. Joyner
United States Magistrate Judge

---

[14]*See* 20 C.F.R. § 404.1527(d)(2)("We will always give good reasons in our . . . decision for the weight we give your treating source's opinion.").